BOWEN W. SIMMONS, Retired Circuit Judge.
Appellant-defendant, an indigent, was tried the second time (the first trial was a mistrial) on an indictment for robbery and convicted. The jury fixed punishment at fifteen years in the penitentiary. This appeal is from a judgment according to the verdict. The appointed counsel here appearing for appellant is not the same counsel who represented him at nisi prius.
The victim of the robbery was Peter E. Louys, II, who, at the time, was an employee of Hunter’s Texaco Service Station (in Auburn) as alleged in the indictment.
This victim testified as to the details of the robbery and the amount of money taken. It appears from the victim’s testimony that he was alone at the filling station and was robbed about 9:30 P.M. on August 4, 1975. It appears that the station was brightly lighted with fluorescent lights. At this hour (9:30 P.M.) a colored male came into the office and represented that he wanted help to repair his automobile and wrecker service would be required. The witness then walked into the office at which time the colored male threatened him with injury by use of a knife. He forced him into a back office with the cash drawer. The colored male by threats forced the witness to go on the outside where both got into the automobile of the witness and proceeded about a mile to an isolated area on a dirt road. We will not relate the details of the instructions about where to go that emanated from the mouth of the colored male; neither will we relate the details of the conversation after the designated area was reached. Suffice it that the record is replete with evidence by the witness that he got a good look at the robber and had ample opportunity to hear the tone of his voice. After the robber fled, the witness flagged another car and went back to his station.
After reaching the station, the victim gave a description to the police. We will not weight this opinion with the description. He also went to the police station and conferred with some police officers. When he returned to the station in an unmarked police automobile, the defendant was there leaning up against the left fender of a police car with an officer present. He stated that he did not see any handcuffs on defendant and no one had a gun or anything pointing at him. The following colloquy occurred in the police car:
“Q. All right. When you pulled up in back of Sergeant Murphy’s car, what, if anything, took place then?
*42 “A. I was sitting in the back and Chief deGraffenried said, ‘Is that the fellow?’ And I told him I couldn’t see clearly from there and could I get out and walk up close and he said, ‘Yeah.’
“Q. And did you get out?
“A. Yes, sir, I did.
“Q. All right. Did you go up closer to the defendant?
“A. Yes, sir, within about three feet of him.
“Q. All right. Did you take a good look at him then?
“A. Yes, sir.
“Q. Were you able to identify him as the one having robbed you just a short time earlier that evening?
“A. Yes, sir, I did.
“Q. At the time you saw the defendant on this occasion, was he wearing the same clothes?
“A. No, sir. He had changed clothes. “MR. LESTER: Objection, Your Honor, unless he knows that he changed clothes of his own personal knowledge.
“THE COURT: Well, did he have on the same clothes?
“THE WITNESS: He was wearing different clothes.
“THE COURT: When you saw him the second time did he have on the same clothes as when you saw him in the filling station the first time?
“THE WITNESS: No, sir.
“THE COURT: Different clothing?
“THE WITNESS: Different clothing, yes, sir.
******
“Q. Were you able to detect at this time the dark space between his teeth; that is the dark space where his teeth joined together?
“A. Yes, sir.
“Q. Were there any other characteristics you were able to distinguish at this time?
“A. His build, his skin coloring, the lower face.”
The witness further testified that he was with the defendant approximately twenty minutes from the time he walked into the filling station until he was put out on the isolated area of the dirt road.
On cross-examination, the witness said he did not see the defendant again from the time he identified him at the station with the police until he pointed him out in court.
Jack Brantley, a police officer, testified that he was on patrol duty the night of August 4,1975, when he received a dispatch concerning a robbery alleged to have been committed at the Texaco Station. This was about 10:00 P.M.; that he was advised that the robbery happened about 9:40; also that the description of the suspect jibed with the description of somebody he had seen earlier that evening across the street in the A & P parking lot. He identified the individual as Frank Pitts, the defendant, whom he had known about seven or eight years. He went to Frank Pitts’ home about 10:15 or later, but Pitts was not at home. He talked to Pitts’ mother and left word for him to call the police department. He testified that he went back to the house about 11:00 P.M. and took him in custody and transported him to Hunter’s Texaco Station and then to the Auburn Police Department. He testified that Pitts did not change clothes before he took him to jail and that he cooperated with the witness.
Defendant’s witnesses testified that defendant was at home when the alleged robbery occurred watching television.
Defendant took the stand and supported the alibi of his witnesses. He admitted on cross-examination that he was convicted of larceny from a person and that in the years 1967, 1968 and 1969 he was in the Alabama Industrial School in Montgomery and was not in the Auburn High School at that time at which time an officer testified he saw him in at Auburn High School.
All in all, the testimony presented a factual question as to the guilt or innocence of defendant.
I
Appellant contends that the court erred in admitting in evidence the victim’s *43 in-court identification of defendant because it was based upon a prior identification at the scene of the crime; that there was no showing by the State of an independent source of identification. Contention is here made that the totality of the circumstances involved in the conduct of the identification were highly suggestive and conducive to a mistaken identification and a denial of due process.
We do not agree with this contention. The victim had ample opportunity in a well lighted station to view the defendant who was unmasked; and also was in close contact with him in an automobile en route to the isolated area on a dirt road where he was released, altogether about twenty minutes. This identification took place not long after the robbery. We think the observation of this court in Wilson v. State, 57 Ala.App. 124, 326 So.2d 316, cert. denied, 295 Ala. 429, 326 So.2d 319, has application.
In this case we quoted at length from Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. We will not repeat.
We conclude that under the totality of circumstances here presented, the identification was reliable even though the confrontation procedure might have been mildly suggestive.
There was no error in admitting the in-court identification in evidence.
II
The next assertion of defendant is that the court trespassed on his rights, and erred to reversal, by not appointing counsel of his selection (one or both of his paid lawyers who represented him on the first trial) to represent him on the instant trial. He made known to the court that he was not pleased or happy with the appointed counsel on the second trial.
A colloquy occurred between the court and defendant, who requested new counsel right on the eve of trial. The record indicates that defendant did not have any money “at the present time,” but if he had more time, he could get up some money. It appears that the original attorneys withdrew from the case because of a lack of money, and defendant did not have any money at the time of trial to pay them. He just offered hope and speculation that his “folks” could get up some money. The record fails to show that defendant wanted to represent himself. The court refused to continue the ease.
It appears to us that indigents should not be too “choosy” about getting their choice of lawyers and have no just complaint as long as the appointed attorney is competent, diligent and faithful.
We are in accord with the observation of appellant’s attorney here appearing. We quote from his brief:
“ . . . This is not to say, by any means, that the Court appointed attorneys who in fact handled the case, did anything less than admirable jobs. As a matter of fact the defense in this case, in my opinion, was vigorous, throughout the trial and there is no question as to the ability of either attorney or their confi-dency (sic) raised.”
We hasten to state without reservations that the trial court’s appointed counsel at nisi prius and on this appeal were excellent lawyers, diligent and faithful to their trust. We think defendant should be very grateful that he was given such diligent and competent attorneys instead of complaining. He got a fair trial, was ably represented, and with like representation on this appeal; his complaint is wholly without merit.
The judgment of conviction is affirmed.
The foregoing opinion was prepared by the Honorable Bowen W. Simmons, Retired Circuit Judge, serving as a Judge of this Court under Section 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.